UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

| Proceedings: | (IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION TO REMAND TO STATE COURT (DKT. 16) |
|---|---|

## I.   Introduction

On August 14, 2014, Sergio Gutierrez filed this putative class action in the Los Angeles Superior Court against Stericycle, Inc. ("Stericycle"), and Does 1-100 (collectively, "Defendants"). Comp., Dkt. 1-1. Gutierrez died in September 2014. Notice of Removal Ex. A-23, Dkt. 1-23 at 6.

Defendants demurred to the complaint (Notice of Removal Ex. A-19, Dkt. 1-19) and opposed Gutierrez's Motion for Class Communications to Find a Replacement Class Representative. Notice of Removal Ex. A-23, Dkt. 1-23. On May 26, 2015, Defendants produced a list of 1316 hourly, non-exempt Stericycle employees in California. Decl. of Gregg Lander ¶ 2, Dkt. 16-1.

On August 28, 2015, Kenneth Moniz and Kevin Henshaw ("Plaintiffs") replaced Gutierrez as named plaintiffs in this action and a First Amended Complaint ("FAC") was filed in which they were named. Notice of Removal Ex. B, Dkt. 1-31. Moniz worked as an hourly, non-exempt employee from approximately mid-2013 to October 14, 2014 in Stericycle's Union City, California facility. *Id.* ¶ 8. Henshaw worked as an hourly, non-exempt employee from approximately April 2006 to April 2014 as an in-state truck driver at Stericycle's Fresno, California facility. *Id.* ¶ 11.

Plaintiffs assert the following 14 causes of action: (i) failure to pay all wages due to illegal rounding (*id.* ¶¶ 37-52; (ii) failure to pay all wages for donning (*id.* ¶¶ 54-68); (iii) failure to pay overtime wages at the appropriate overtime pay rate (*id.* ¶¶ 70-78); (iv) failure to provide meal periods (*id.* ¶¶ 80-92); (v) failure to authorize and permit paid rest periods (*id.* ¶¶ 94-102); (vi) failure to pay vested vacation pay (*id.* ¶¶ 104-14); (vii) independent failure timely to furnish accurate itemized wage statements (*id.* ¶¶ 116-26); (viii) derivative failure timely to furnish accurate itemized wage statements (*id.* ¶¶ 128-40); (ix) violations of Cal. Lab. Code § 203 (*id.* ¶¶ 142-47); (x) penalties pursuant to Cal. Lab. Code § 2699 (*id.* ¶¶ 149-58); (xi) unfair business practices (*id.* ¶¶ 160-70); (xii) breach of express and/or implied contract (*id.* ¶¶ 172-77); (xiii) breach of covenant of good faith and fair dealing (*id.* ¶¶ 179-82); and (iv) declaratory relief (*id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

¶¶ 184-88). They seek "recovery for Defendants' violations of California Labor Code [] §§1194, et seq., Labor Code §§200, et seq., Labor Code §§500, et seq., Labor Code §§2698, et seq., California Business and Professions Code [] §§17000, et seq., the applicable Wage Orders issued by the California Industrial Welfare Commission [] and related common law principles." *Id.* ¶ 1. Plaintiffs assert that "[t]he acts complained of herein occurred, occur and will occur, at least in part, within the time period from four (4) years preceding the filing of the original Complaint herein, up to and through the time of trial for this matter . . . ." *Id.* ¶ 3.

Plaintiffs seek to proceed with the following subclasses:

a. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period to whom Defendants applied a time-rounding policy and practice (the "Rounding Class");

b. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' donning policies and practices (the "Donning Class");

c. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who worked more than eight hours per day and/or more than 40 hours per week and whose overtime pay from Defendants was not calculated to include consideration of all applicable forms of remuneration (the "Overtime Rate Class");

d. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding meal periods (the "Meal Period Class");

e. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding rest periods (the "Rest Period Class");

f. All formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding vacation pay (the "Vacation Pay Class");

g. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding itemized wage statements (the "Independent Wage Statement Class");

h. All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding itemized wage statements (the "Derivative Wage Statement Class");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

   i.   All formerly-employed California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period who were subjected to Defendants' policies and practices regarding Labor Code § 203 and the payment of final wages (the "LC 203 Class");

   j.   All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period regarding whom Defendants have engaged in unlawful, unfair, and/or fraudulent business acts or practices prohibited by Cal. Bus. & Prof. C. § 17200, et seq. (the "17200 Class");

   k.   All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period with whom Defendants breached express and/or implied employment contracts (the "Contract Class"); and

   l.   All California citizens employed by Defendants as hourly-paid, non-exempt employees during the appropriate time period with whom Defendants breached the covenant of good faith and fair dealing (the "Good Faith Class").

*Id.* ¶ 29. On September 28, 2015, Defendants filed an Answer to the FAC. Notice of Removal Ex. A-28, Dkt. 1-28.

On October 19, 2015, Defendants removed this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Dkt. 1. In their Notice of Removal, Defendants contend that removal is proper under CAFA because the proposed class exceeds 100 members, minimal diversity of citizenship exists and the aggregated amount in controversy exceeds $5,000,000. Dkt. 1 at 6-7.

Plaintiffs moved to remand ("Motion"). Dkt. 16. Plaintiffs do not dispute that the parties' citizenship is minimally diverse or that there are more than 100 putative class members. However, Plaintiffs argue that remand is required for two reasons. *First,* the removal was untimely. *Second,* Defendants have failed to show that the amount in controversy exceeds $5,000,000. *Id.* at 9. Alternatively, Plaintiffs request leave to conduct jurisdictional discovery in order to rebut Defendants' assertion of subject matter jurisdiction. *Id.* Defendants opposed the Motion (("Opposition"), Dkt. 24) and Plaintiffs replied (("Reply"), Dkt. 26).

A hearing on the Motion was held on March 21, 2016 and it was taken under submission. Dkt. 35. At the hearing, Stericycle's counsel confirmed that it had entered into settlement agreement and releases with certain members of the putative class, and estimated that it may have entered into hundreds of such agreements. Dkts. 36, 37. Consequently, the Court ordered Stericycle to file a declaration setting forth the following information: (i) of the putative class members Stericycle identified, the number who, as of the date of the removal of this action, had entered into a Settlement Agreement with Stericycle as to the putative class claims asserted in this action; and (ii) a copy of the form or forms of such Settlement Agreements. *Id.* In response, Stericycle's counsel filed a declaration stating that, of the 1385 putative class members, Stericycle had entered into settlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | | Date | February 14, 2017 |
|---|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | | |

agreements with 723 of its current and former employees on or before the date of removal. Dkt. 38. Stericycle's counsel attached an example of such a settlement agreement. *Id.* Ex. A.

Upon reviewing this information, Defendants were ordered to provide the following additional information:

> (1) of the 723 Settlement Agreements that have been signed by Defendant's employees or former employees, how many were signed prior to August 14, 2014, when the Complaint (Dkt. 1) in this action was filed; (2) of the $10,305,970 amount, which includes $2,061,194 in attorneys' fees, that Defendant contends was in controversy as of the date of removal in its Opposition, what separate dollar amounts, exclusive of attorney's fees, did Defendant allocate to the claims of those with whom it: (a) had entered Settlement Agreements, and (b) had not entered Settlement Agreements; (3) whether the amount of attorney's fees presented ($2,061,194) would be different if the putative class did not include those with whom the Settlement Agreements were entered, and if so, by what amount; (4) any potential basis on which Defendant contends the enforceability of the Settlement Agreements could be challenged by those with whom it entered them; and (5) any new discussion that addresses the effect of the foregoing matters on the removability of this action.

Dkt. 39. Plaintiffs were given an opportunity to respond. *Id.* The parties filed these briefs. Dkts. 42, 43. Thereafter, the matter was taken under submission. For the reasons stated in this Order, the Motion is **DENIED**.

**II.    Factual Background**

**A.    Case History**

The Notice of Removal states that, based on Plaintiffs' allegations, the time period relevant to the claims began on August 14, 2010 (four years before the original Complaint was filed) and would last "up to and through the time of trial." FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶ 3. Whether there is jurisdiction over a removed action is determined based on the facts as of the time of removal. Consequently, Defendants stated that they considered the period from August 14, 2010 to August 28, 2015, which was approximately 10 weeks prior to the removal. The Notice of Removal states that during this time, there were 1350 hourly, non-exempt Stericycle employees in California. Notice of Removal, Dkt. 1 at 9.

**B.    Defendants' Estimates in the Removal**

**1.    First Cause of Action: Unpaid Wage Claim ($1,374,960)**

In the FAC, Plaintiffs allege that Stericycle rounded employees' wages, "usually down," so that class members were "paid less than they would have been paid had they been paid for actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|----------|--------------------------|------|-------------------|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

time recorded rather than 'rounded' time." FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶ 44(b).
Plaintiffs allege that the alleged "rounding down" of wages:

- Was "a matter of established company policy and procedure";
- Was "consistently" practiced "at each and every one of the individual facilities owned and/or operated by [Stericycle]";
- Was a matter of "corporate policy" and "uniform company policy and practice"; and
- Stericycle's "pattern, practice and uniform administration of corporate policy regarding illegal employee compensation" resulted in Stericycle not paying "the full amount of wages owing" to class members and not "pay[ing] the legal minimum wage" to class members.

*Id.* ¶¶ 44-48.

Plaintiffs seek (a) "the full amount of the straight time compensation due and owing," (b) "the full amount of overtime compensation due and owing" and (c) "liquidated damages . . . in an amount equal to the wages unlawfully unpaid and interest thereon." *Id.* ¶¶ 48-49; Prayer for Relief ¶¶ (b)-(d). Plaintiffs also seek interest and attorneys' fees and costs. *Id.* ¶¶ 51-52.

In the Notice of Removal, Defendants estimated that, based on Plaintiffs' unpaid wages claim, the amount in controversy was approximately $1.4 Million. Notice of Removal, Dkt. 1 at 10. Defendants stated that this estimate was based on the following assumptions:

- Only 25% of the putative class members suffered from the alleged illegal rounding down. *Id.*
- The rounding down occurred on only one-half of their respective work days. *Id.*
- The rounding down amounted to one-quarter hour of worktime on each occasion. *Id.*
- The average wage of hourly, non-exempt employees was more than $17. *Id.*
- These hourly workers worked five days per week and worked an average of 48 weeks per year. *Id.*

Given these assumptions, Defendants calculated that there were approximately 1200 work days during the period between August 14, 2010 and August 28, 2015. Thus, for 337 hourly, non-exempt employees, working 480 days, and suffering the alleged loss of one-quarter of an hour of paid work time, the amount of alleged unpaid wages was $687,480. Adding liquidated damages of $687,480, Defendants estimated that the total amount in controversy for the unpaid wage claim is $1,374,960. *Id.*

2.   <u>Second Cause of Action: Unpaid Donning Time ($1,374,960)</u>

Plaintiffs allege that class members were not paid for the time spent each day to put on (or "don") required "uniforms, equipment and/or safety gear." Class members were allegedly required to don uniforms, special equipment and safety gear "before clocking in for work" each day. FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶ 61. They also allege that this refusal to pay for donning time:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

- was "a matter of established company policy and procedure;"
- was "consistently" practiced "at each and every one of the individual facilities owned and/or operated by [Stericycle];"
- was a matter of "corporate policy" and "uniform company policy and practice;" and
- Stericycle's "pattern, practice and uniform administration of corporate policy" not to pay for daily donning time resulted in Stericycle not paying "the full amount of wages owing" to class members and not "pay[ing] the legal minimum wage" to class members.

*Id.* ¶¶ 61-64.

As a remedy for this claim, Plaintiffs seek (i) "the full amount of straight time compensation due and owing," (ii) "the full amount of overtime compensation due and owing" and (iii) "liquidated damages . . . in an amount equal to the wages unlawfully unpaid and interest thereon." *Id.* ¶¶ 63-65 and Prayer for Relief ¶¶ g-i. Plaintiffs also seek interest and attorneys' fees and costs. *Id.* ¶¶ 67-68.

In the Notice of Removal, Defendants estimated the amount in controversy from the donning claim was approximately $1.4 Million. Notice of Removal, Dkt. 1 at 11. Defendants based this estimate on the following assumptions:

- Only 25% of the putative class members suffered from the alleged unpaid donning. *Id.*
- The unpaid donning occurred on only one-half of their work days. *Id.*
- The donning time was only one-quarter of an hour. *Id.*
- The average wage of hourly, non-exempt employees was more than $17. *Id.*
- These hourly workers worked five days per week and worked an average of 48 weeks per year. *Id.*

Given these assumptions, Defendants calculated that there were approximately 1200 work days during the period between August 14, 2010 and August 28, 2015. Thus, for 337 hourly non-exempt employees, working 480 days, and suffering the loss of one-quarter of an hour of paid work time, the amount of alleged unpaid wages is $687,480. Adding liquidated damages of $687,480, Defendants estimated in the Notice of Removal a total amount in controversy for the unpaid wage claim of $1,374,960. *Id.* at 12.

3.     Fourth Cause of Action: Meal Periods Claim ($1,099,968)

Plaintiffs allege that Stericycle did not always provide to class members the legally required and compliant first and second meal periods, and did not "even include meal periods on their work schedules." FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶ 89. Plaintiffs allege that these failures reflected Stericycle's "established company policy." *Id.* For each workday in which Stericycle failed to provide at least one legally required and compliant meal period, the FAC seeks one hour of pay at the applicable, regular rate of pay. This would constitute a premium payment. Plaintiffs also seek pre-judgment interest, attorney's fees and costs. *Id.* ¶¶ 90-92.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

In the Notice of Removal, Defendants estimated the amount in controversy based on Plaintiffs' meal period claim is approximately $1 Million. Notice of Removal, Dkt. 1 at 12. This estimate is based on following assumptions:

- Only one fourth of the putative class members suffered from the denial of a meal period. *Id.*
- The failure to provide a first or second required meal period occurred only one day per week. *Id.*
- The average wage of hourly, non-exempt employees was more than $17. *Id.* at 13.
- These hourly workers worked five days per week and worked an average of 48 weeks per year. *Id.*

Given these assumptions, Defendants calculated that there were 240 work weeks between August 14, 2010 and August 28, 2015. Thus, for 337 hourly, non-exempt employees, working 192 weeks, the amount of premium payments at $17 per hour for denied meal periods would be $1,099,968. *Id.*

4.      Fifth Cause of Action: Rest Periods Claim ($1,099,968)

Plaintiffs allege that Stericycle did not always provide to class members the legally required and compliant rest periods due to Stericycle's "established company policy." FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶ 99. For each work day in which Stericycle failed to provide one or more legally required rest periods, Plaintiffs seek one hour of pay at their regular rate of pay, which would constitute a premium payment. Plaintiffs also seek pre-judgment interest, attorney's fees and costs. *Id.* ¶¶ 100-102.

In the Notice of Removal, Defendants estimated the amount in controversy based on Plaintiffs' rest period claim is approximately $1 Million. Notice of Removal, Dkt. 1 at 13. Defendants based this estimate on the following assumptions:

- Only one fourth of the putative class members suffered from the denial of a rest period. *Id.*
- The failure to provide a rest period occurred only one day per week. *Id.*
- The average wage of hourly, non-exempt employees was more than $17. *Id.*
- These hourly workers worked five days per week and worked an average of 48 weeks per year. *Id.*

Given these assumptions, Defendants calculated that there were 240 work weeks between August 14, 2010 and August 28, 2015. Thus, for 337 hourly, non-exempt employees, working 192 weeks, the amount of premium payments at $17 per hour for denied meal periods is $1,099,968. *Id.* at 14.

5.      Seventh and Eighth Cause of Action: Wage Statement Claims ($842,500)

Plaintiffs allege that Stericycle knowingly and intentionally provided inaccurate wage statements to class members that did not include required information. FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶¶ 119-123. Stericycle's alleged failure was "a pattern and practice followed by Stericycle

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

in the past and is "still" continuing today. *Id.* ¶¶ 119, 123. Stericycle's alleged misconduct "misled" class members and prevented them from knowing whether they were being properly paid. *Id.* ¶¶ 122-23. Plaintiffs seek $50 per employee for the initial pay period in which a violation occurred and $100 per employee for each subsequent pay period, not exceeding an aggregate penalty of $4000 per class member. Plaintiffs also seek an award of attorney's and costs. *Id.* ¶¶ 124, 126.

In the Notice of Removal, Defendants estimated the amount in controversy based on Plaintiffs' wage statement claim is $842,500. Notice of Removal, Dkt. 1 at 15. Defendants based this estimate on the following assumptions:

- Only one fourth of the putative class members received inaccurate wage statements. *Id.*
- The average recoverable penalty is $2500. *Id.*

### 6.    Ninth Cause of Action: Waiting Time Penalty ($1,020,000)

Plaintiffs allege that Stericycle failed to pay the correct amount of wages owed to class members who resigned or were terminated from employment. Plaintiffs claim that Stericycle had "a consistent and uniform policy, practice and procedure of willfully failing to pay the earned wages of [its] former employees." FAC, Notice of Removal Ex. B, Dkt. 1-31 ¶¶ 144-45. Specifically, Plaintiffs allege that Stericycle failed to pay class members their entire wages owed, either "at the time of their termination" in the case of employees involuntarily terminated or "within seventy- two (72) hours" in the case of employees who quit, and additionally Stericycle "failed to pay those sums for up to thirty (30) days thereafter." *Id.* ¶ 145.

In the Notice of Removal, Defendants estimated the amount in controversy based on this claim is $1,020,000. Notice of Removal, Dkt. 1 at 16. Defendants based this estimate on the following assumptions:

- Only 250 class members (less than one-fifth of the putative class members) resigned or were terminated during the relevant time period. *Id.*
- Each affected class member would be eligible for the 30-day penalty. *Id.*
- The average wage of hourly, non-exempt employees was more than $17. *Id.*
- The employees worked an eight hour day. *Id.*

### 7.    Remaining Causes of Action

Defendants did not provide an estimated amount in controversy as to Plaintiffs' remaining claims. *Id.* at 16.

### 8.    Total Amount in Controversy

The amount in controversy for Plaintiffs' First, Second, Fourth, Fifth, Seventh, Eighth, and Ninth Claims as estimated in Defendants' Notice of Removal is $6,812,356. Defendants also included

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | | Date | February 14, 2017 |
|---|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | | |

an estimate of a claim for attorney's fees of $1,703,089. *Id.* at 17. This is 25% of the amount in dispute from the aforementioned claims. Thus, the total estimated amount in controversy including attorney's fees is $8,515,445. *Id.*

### C.   Defendants' Analysis in their Opposition

In support of the Motion, Plaintiffs challenged Defendants' calculations, arguing that each is based on "speculation and conjecture." Motion, Dkt. 16 at 9. In their Opposition, Defendants offer additional evidence that changes the estimated value of certain claims.

Defendants filed the declaration of David Beaudoin, the Manager of Human Resources Information Systems at Stericycle. He oversees all human resources systems as they relate to data analytics, system enhancements, entry of new hire data and employee changes. Decl. of David Beaudoin ¶ 2, Dkt. 24-1. Beaudoin states that he compiled data concerning employee punch card information relevant to this matter by using the "SQL" program. In doing so he selected all punch records from Stericycle's time-tracking system between August 14, 2010 and October 19, 2015 for any employee who was paid hourly and worked in California. *Id.* ¶ 3. Beaudoin states that he compiled payroll data by using the "SQL" program and selecting all earnings data from Stericycle's payroll system associated with any paycheck issued between August 10, 2010 and October 19, 2015 for any employee who was paid hourly and worked in California at the time the paycheck was issued. *Id.* This information was then provided to Stericycle's counsel, who provided it to Ted Tatos, who is a data analyst. *Id.* ¶ 4.

Defendants also offer the declaration of Tatos, the President of Empirical Analytics. He states that he has approximately 20 years of experience in statistical and economic consulting, including performing numerous wage and hour calculations and providing analytics on other employment-related matters. Decl. of Ted Tatos, Dkt. 24-2 ¶ 2. Tatos states that he has reviewed and analyzed extensively the payroll and punch card data that Beaudoin collected. *Id.* Tatos states that this included data for approximately 1385 employees, which reflected all non-exempt employees in California from August 14, 2010 through October 19, 2015. *Id.* ¶ 4. Tatos states that he compiled two data sets: the Punch Data, which contained all time clock entries for this group of employees, and the Payroll Data, which contained all the payroll entries for this group. *Id.* ¶ 5. The Punch Data includes for a single work day, the employee name, employee ID, date worked and the times that the employee punched in and out. *Id.* ¶ 6. The Payroll Data, for each pay period, contains the employee name, the termination date (for inactive employees), the last date of the pay period, the earnings code, the hourly wage in that regular category, the number of hours recorded, the employee's job title and the employee's work location. *Id.* ¶11.

Using this data, Defendants recalculated the amount in controversy with respect to Plaintiffs' Fourth, Seventh, Eighth and Ninth Claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

### 1.   Fourth Cause of Action: Meal Period Claim ($4,258,457)

Defendants determined that approximately $4,258,457 is in controversy as to Plaintiffs' meal period claim. This amount is significantly higher that their original estimate of $1,099,968. Using the Punch Data and Payroll Data for the time period of August 10, 2010 to the date of removal of October 19, 2015, to reflect the four-year statute of limitations on this claim,[1] Tatos calculated (i) the time between when the employee punched in for work and punched out for lunch; (ii) the time between when the employee punched out for lunch and punched back in from lunch; and (iii) the total hours the employee worked in a single workday. Decl. of Ted Tatos, Dkt. 24-2 ¶ 7. Tatos then calculated: (i) whether the employee worked at least five hours in the workday (which is necessary to trigger the meal-period obligation); (ii) whether the employee clocked out for a meal period at all; (iii) assuming the answer was yes to (ii), whether the employee clocked out for lunch by the end of the fifth hour of work; and (iv) again assuming the answer was yes to (ii), whether the employee's lunch was at least 27 minutes in length (which reflects that the employee was provided a 30-minute meal period, with some latitude for an employee returning early by a de minimus amount). *Id.* Assuming that employees did not take meal periods except when they recorded them, Tatos identified cases without a compliant meal period. *Id.* ¶ 8. For each workday in which Stericycle allegedly failed to provide a compliant meal period, Plaintiffs seek one hour of pay at the employee's regular rate of pay, *i.e.*, premium payment. Tatos used the Punch Data to identify for each employee in the putative class, the total number of shifts the employee worked and the total number of allegedly noncompliant meal periods, whether they were taken late, not taken or were too short. *Id.* ¶¶ 9-10. Tatos then multiplied the number of incidents in which any employee had any violation with respect to a meal break by that person's regular hourly rate in effect on each work day on which any violation allegedly occurred. *Id.* ¶ 12. This calculation showed a total of 234,367 of incidents affecting 1334 employees, generating $4,258,457 in meal period penalty pay. *Id.*

### 2.   Seventh and Eighth Cause of Action: Wage Statement Claims ($2,151,150)

Using the new data, Defendants calculated that $2,151,150 is placed in controversy by Plaintiffs' wage statement allegations. This is substantially greater than their original estimate of $842,500. To calculate this amount, Tatos limited the Payroll Data to August 14, 2013 to October 19, 2015 (the date of removal) to account for the one-year statute of limitations. Decl. of Ted Tatos, Dkt. 24-2 ¶ 13; Opposition, Dkt. 24 at 22. Tatos tallied the number of pay periods during which an individual suffered an alleged meal period violation (and thereby allegedly suffered a wage statement violation for incorrect wages reported) between August 14, 2013, and October 19, 2015, and then multiplied the number of alleged wage statement violations for each employee by the penalty Plaintiffs seek ($50 penalty for the first defective wage statement per individual during the relevant period and a $100 penalty for subsequent defective wage statements, with a cap of $4,000 in penalties for any individual in the proposed class). Decl. of Ted Tatos, Dkt. 24-2, ¶¶ 14, 15. This resulted in a figure of $2,151,150 in wage statement penalties for the proposed class. *Id.* ¶ 15.

---

[1] Defendants state that they base this statute of limitations on Plaintiff's eleventh cause of action pursuant to Cal. Bus. & Prof. Code § 17200.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

3.      Ninth Cause of Action: Waiting Time Penalty ($1,835,169)

Using this data, Defendants calculate that $1,835,169 is placed in controversy by Plaintiffs' waiting time penalty allegations. This is greater than Defendants' original estimate of $1,020,000. In calculating this larger amount, Tatos identified each employee who had separated from employment with Stericycle (voluntarily or involuntarily) since August 14, 2011. Decl. of Ted Tatos, Dkt. 24-2, ¶ 16. Within that group, Tatos identified the employees who had allegedly suffered any meal period violation in the Punch Data. *Id.* Tatos states that approximately 505 employees have separated from employment with Stericycle since August 14, 2011, and of those, 485 allegedly suffered a meal period violation. *Id.* For each of the 485 employees, Tatos calculated waiting time penalties by multiplying the affected employee's last effective regular hourly rate of pay by eight. This led to a determination of the regular daily rate of pay (assuming a regular eight-hour workday). He then multiplied that daily rate of pay for each employee by 30 days. This resulted in a calculation of aggregate waiting time penalties of $1,835,169. *Id.*

4.      Remaining Causes of Action

Defendants did not provide an estimated amount in controversy as to Plaintiffs' remaining claims. Opposition, Dkt. 24 at 24.

5.      Total Amount in Controversy

The amount in controversy for Plaintiffs' Fourth, Seventh, Eighth and Ninth Claims as estimated in Defendants' Opposition is $8,244,776. Defendants include a claim for attorney's fees based on 25% of the amount at issue, *i.e.*, an award of $2,061,194. Thus, the total estimated amount in controversy including attorney's fees is $10,305,970.

**D.      Defendants' Analysis in their Supplemental Briefing**

As noted above, at the hearing, the Court ordered Stericycle to file a declaration setting forth the number of putative class members who had released their claims against Defendants as of the date of removal. Stericycle identified 723 such current and former employees. Dkt. 38 ¶ 5. Subsequently, Defendants were ordered to take the released claims into account when calculating the amount in controversy as of the date of removal. Dkt. 39.

Defendants argued that the relevant date for the potential exclusion of released claims was when the FAC was filed. It then reported that 626 releases were signed prior to that date. *See* Supplemental Brief, Dkt. 42 at 8; Second Decl. of Mark Gavre., Dkt. 42-1 at ¶ 3. They argued that analyzing the payroll records of those class members who remain, $4,119,085 remains in controversy, based on Plaintiffs' Fourth, Fifth, Seventh, and Eighth Claims. Third Decl. of Ted Tatos, Dkt. 42-2 ¶ 6. Assuming a request for a fee award of 25% of this amount, the amount of the potential fee award is $1,029,771. Thus, $5,148,856 remains in controversy for those claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

Defendants did not provide an analysis of the amount in controversy that would remain assuming the exclusion of the 723 putative class members who had released their claims by the time of the removal of this action. Nor did Defendants provide payroll data for the 97 class members who signed releases between the time of the filing of the FAC and the removal. However, the amount in controversy for 54.8% of the original putative class, exclusive of attorney's fees, is $4,119,085. Further, if the additional 97 persons who signed releases are excluded, the amount in controversy would result in a reduction to $3,592,667.

**III.    Analysis**

      **A.    Whether the Removal was Untimely**

           1.    Legal Standard

CAFA provides federal jurisdiction over certain class actions. As stated above, they are defined in § 1332(d) as those that meet the following criteria: (i) the class has more than 100 members; (ii) the parties are minimally diverse; and (iii) the amount in controversy exceeds $5 Million. The amount in controversy is simply an "estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Roth*, 720 F.3d at 1126 (citations omitted). Specifically,

> 28 U.S.C. § 1446(b) provides that the notice of removal of a civil action shall be filed within 30 days of the receipt of the initial pleading or summons by the defendant. This requirement is qualified where "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). Under those circumstances, "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* The 30-day statutory time limit for removal is a procedural, not jurisdictional, requirement. *Smith v. Mylan Inc.,* 761 F.3d 1042, 1045 (9th Cir. 2014). However, "the time limit is mandatory and a timely objection to a late petition will defeat removal." *Id.* "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 554 (2014). Where a pleading is "indeterminate with respect to removability," a defendant "does not lose the right to remove because it did not conduct . . . an investigation and then file a notice of removal within thirty days of receiving the indeterminate document." *Roth v. CHA Hollywood Med. Ctr., L.P.,* 720 F.3d 1121, 1125 (9th Cir.2013) . . . . Pleadings are "indeterminate" where "the face of the complaint does not make clear whether the required jurisdictional elements are present." *Kuxhausen v. BMW Fin. Servs. NA LLC,* 707 F.3d 1136, 1139 (9th Cir. 2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

"[D]efendants need not make extrapolations or engage in guesswork; yet the statute requires a defendant to apply a reasonable amount of intelligence in ascertaining removability. Multiplying figures clearly stated in a complaint is an aspect of that duty." *Id.* at 1140 (citation and internal quotation marks omitted).

*Hubbs v. Big Lots Stores, Inc.*, No. LA CV15-01601 JAK, 2015 WL 3644002, at *3 (C.D. Cal. June 9, 2015).

        2.   <u>Application</u>

Stericycle sent a letter dated August 7, 2015, proposing a settlement that would involve a payment to, and a release of claims by, its California hourly employees. Decl. of Kevin Henshaw Ex. A, Dkt. 16-2. Plaintiffs allege that this letter suggests that Defendants had investigated and evaluated the class claims. Motion, Dkt. 16 at 8. Plaintiffs also contend that, in another version of the letter that was sent to some employees, Defendants expressly stated that they had "conducted an internal investigation into these allegations." Decl. of Gregg Lander Ex. 1, Dkt. 16-1 at 4.

On May 26, 2015, Defendants produced a list of 1316 hourly, non-exempt employees of Stericycle in California. Decl. of Gregg Lander, Dkt. 16-1, ¶ 2. Plaintiffs argue that months before Defendants removed this action, they were aware of the scope of the claim and that the facts and circumstances "strongly suggest[ed]" that the defendant "could have reasonably and intelligently ascertained the amount in controversy." *Levanoff v. SoCal Wings LLC* 2015 WL 248338, at *2 (C.D. Cal., Jan. 16, 2015, SACV 14-01861-CJC). Plaintiffs argue that objective evidence of a defendant's knowledge of the amount in controversy constituted an "other paper" triggering the 30-day deadline of 28 U.S.C. § 1446(b)(3). *See Bea v. Encompass Ins. Co.*, CV-13-00008-JLQ, 2013 WL 1747910, at *2 (N.D. Cal., Apr. 23, 2013) (The term "other paper" "includes written discovery responses, settlement offers, demand letters, deposition testimony, and correspondence between counsel."). Plaintiffs argue that Defendants are engaging in the sort of "abusive gamesmanship" addressed in *Roth*. Furthermore, Plaintiffs argue that *Roth* only applies to cases in which a defendant promptly investigates removal and removes the action. However, in this action, they argue that Defendants were not prompt. Plaintiffs note that Defendants had already actively participated in the state court litigation for more than a year prior to the removal.

Defendants respond that, in order to trigger either the 30-day period in 28 U.S.C. § 1446(b), the ground for removal must appear in "the four corners of the applicable pleadings" or "from the face of the document" that is served on or received by the defendant. *Harris v. Bankers Life & Cos. Co.*, 425 F.3d 689, 694 (9th Cir. 2005); *see also Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 (9th Cir. 2013) ("[W]e 'don't charge defendants with notice of removability until they've received a paper that gives them enough information to remove.'") (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247,1251 (9th Cir. 2006)); *Vigil v. Waste Connections, Inc.*, No. 2:14-cv-02383, 2015 WL 627877, *2 (E.D. Cal. Feb. 11, 2015) (notwithstanding that defendant already knew that the parties were of diverse citizenship, removal was timely when filed within 30 days of plaintiffs' discovery response stating their citizenship, "[regardless of when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|----------|--------------------------|------|-------------------|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

[defendant] learned the parties were diverse"); *Bush v. Valassis Communications, Inc.*, No. 2:13-cv-08479, 2014 WL 502584, *3 (C.D. Cal. Feb. 7, 2014) ("Ninth Circuit precedent has expressly held that defendant's subjective knowledge of the relevant facts does not affect the time for removal" ) (citing *Harris*, 425 F.3d at 693). Defendants argue that they had no obligation to investigate or develop additional information as to removability. *Harris*, 425 F.3d at 694 ("[N]otice of removability under §1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant.) Defendants are thus not "saddl[ed] with the burden of investigating jurisdictional facts." *Kuxhausen*, 707 F.3d at 1139.

Defendants also argue that, although *Roth* recognized that "defendants may sometimes be able to delay filing a notice of removal until it is strategically advantageous to do so," "plaintiffs are in a position to protect themselves" by "provid[ing] the defendant a document from which removability may be ascertained." *Roth*, 720 F.3d at 1126. Here, Defendants argue that neither the original Complaint nor the FAC included any information on the size of the putative class or amount in controversy. Further, they claim that Plaintiffs acknowledge this and have not identified any "amended pleading, motion, order or other paper" that Defendants received through service of otherwise "from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C.A. § 1446(b)(3); *see also Adelpour v. Panda Express, Inc.*, No. CV-10-02367, 2010 WL 2384609, at *4 n.7 (C.D. Cal. June 8, 2010) (The "other paper" in Section 1446(b)(3) cannot be one created by defendant; it "must derive from either the voluntary act of the plaintiff . . . or other acts or events not the product of the removing defendant s activity.") (citations omitted); *Owen v. L'Occitane, Inc.*, No. CV-12-09841, 2013 WL 941967, *8 (C.D. Cal. March 8, 2013) ("The requirement that the removing defendant receive a pleading or 'other paper' means that the 'document that triggers the thirty-day removal period cannot be one created by the defendant.'") (quoting *Rossetto v. Oaktree Capital Mgt., LLC*, 664 F. Supp. 2d 1122, 1129 (D. Haw. 2009)); *Jakuttis v. Allstate Indem. Co.*, No. EDCV 15-0624, 2015 WL 3442083, *4 (C.D. Cal. May 27, 2015).

Defendants' removal was timely filed under the standards of *Roth*. Plaintiffs do not contend that the Complaint or FAC triggered the 30-day notice window.[2] Plaintiffs contend that Defendants' own knowledge and investigation triggered the 30-day limit. This position is not supported by the relevant cases. *Harris*, 425 F.3d at 694 ("[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry."); *Vigil*, 2015 WL 627877, at *4 ("Regardless of when Waste Connections learned the parties were diverse, their notice of removal was timely under 28 U.S.C. § 1446(b)(3) . . . ."); *Jakuttis*, 2015 WL 3442083, at *4 ("The crux of Plaintiff's argument for remand -- that Defendant could have removed earlier based on information contained in its own records -- is thus contradicted by Ninth Circuit case law."); *Owen*, 2013 WL 941967, at *8.

---

[2] Defendants stated at the hearing that the filing of the FAC led to removal. Thus, they claim that, prior to its filing, they did not know whether or how the action would proceed. This acknowledgement shows only that the filling of the FAC led Defendants to "subjective knowledge or a duty to make further inquiry" as to whether removal might be appropriate. *Harris*, 425 F.3d at 694. Absent more specific information in the four corners of the applicable pleadings, that knowledge does not trigger the 30-day removal window.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

As explained in *Adelpour*:

> The requirement that the removing defendant receive a pleading or "other paper" means that the "document that triggers the thirty-day removal period cannot be one created by the defendant." *Rossetto v. Oaktree Capital Management, LLC,* 664 F.Supp.2d 1122, 1129 (D.Haw.2009). Thus, "the 'amended pleading, motion, order or other paper' must derive from 'either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity.'" *Smith v. Int'l Harvester Co.,* 621 F.Supp. 1005, 1007 (D. Nev.1985) (quoting *Potter v. Carvel Stores of New York, Inc.,* 203 F.Supp. 462, 467 (D. Md. 1962)). *See also Addo v. Globe Life & Accident Ins. Co.,* 230 F.3d 759, 762 (5th Cir. 2000) ("[T]he 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction").

2010 WL 2384609 at *4 n.7. Following Ninth Circuit precedent, courts have found that a subjective knowledge rule "would needlessly inject uncertainty into a court's inquiry as to whether removal is timely." *Bush*, 2014 WL 502584, at *3.

Defendants may have engaged in some "abusive gamesmanship" by waiting to remove this case after participating in state court litigation for over a year. *Roth*, 720 F.3d at 1126. During that time, they may have determined that this case could be removed pursuant to CAFA. Defendants may have "wait[ed] until the state court ha[d] shown itself ill-disposed to [Defendants] . . . before filing a notice of removal." *Id.* at 1126. However, *Roth* concluded, that under similar facts

> [o]ur best answer -- and a likely sufficient answer -- is that plaintiffs are in a position to protect themselves. If plaintiffs think that their action may be removable and think, further, that the defendant might delay filing a notice of removal until a strategically advantageous moment, they need only provide to the defendant a document from which removability may be ascertained.

*Id.* at 1126. Plaintiffs did not do so here. Therefore, the removal was timely. *See id.* at 1125 ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines.").

      **B.**    **Whether the Amount in Controversy Is At Least $5 Million**

          1.    <u>Legal Standard</u>

"In determining the amount in controversy, courts first look to the complaint. Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|----------|--------------------------|------|-------------------|
| Title    | Sergio Gutierrez v. Stericycle, Inc. | | |

*Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal quotations omitted). "Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Id.* "[T]his rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million" (*id.*) as a plaintiff cannot bind the absent class to stipulations to amounts at issue that fall below the CAFA jurisdictional requirements. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013).

A defendant need only file a notice of removal that includes "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Owens*, 135 S. Ct. at 554. If a plaintiff contests these allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 550. The preponderance of the evidence standard requires that "the defendant must provide evidence establishing that it is more likely than not that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996) (internal quotation marks omitted). The parties may submit evidence, including affidavits or declarations, or other "'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997)); *accord Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("*Standard Fire* instructs courts to look beyond the complaint to determine whether the putative class action meets the jurisdictional requirements."); *Lewis*, 627 F.3d at 400 ("The law in our circuit is articulated a little differently from that of others, in that we expressly contemplate the district court's consideration of some evidentiary record.").

Under these standards, a party who removes an action is not obligated to "research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted). Where a defendant "must prove the amount in controversy by a preponderance of the evidence, a declaration or affidavit may satisfy the burden." *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *6 (C.D. Cal. May 9, 2011) (citing *Lewis*, 627 F.3d at 397). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198. "As with other important areas of our law, evidence may be direct or circumstantial. In either event, a damages assessment may require a chain of reasoning that includes assumptions. When that is so, those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Id.* at 1199.

"Under the preponderance of the evidence standard, if the evidence submitted by both sides is balanced, in equipoise, the scales tip against federal-court jurisdiction." *Ibarra*, 775 F.3d at 1199.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

2.   Application

a)   Plaintiffs' Position

Plaintiffs object to the calculations in Defendants' Notice of Removal and those in their Opposition. Plaintiffs object to the former, noting that Defendants' assumptions are unfounded and that Defendants have provided no evidence to support them. Motion, Dkt. 16 at 17-18. Plaintiffs contend that Defendants exaggerated the class size by assuming that all 1350 hourly, non-exempt employees are within it, although only a fraction of those employees were subject to the policies that are challenged. *Id.* at 18. With respect to the waiting time penalties claim, Plaintiffs argue that Defendants improperly assumed a 100% violation rate. *Id.* at 23-24.

In response to the analysis in Defendants' Opposition, Plaintiffs argue that it improperly includes class members who have settled with Defendants and released their claims. Decl. of Gregg Lander, Dkt. 16-1; Motion, Dkt. 16 at 19; Reply, Dkt. 26 at 9. Plaintiffs argue that released claims cannot be included in the amount in controversy. Reply, Dkt. 26 at 9 (citing *De Leon v. NCR Corp.*, C-12-01637 SBA, 2013 WL 503092, at *3 (N.D. Cal., Feb. 8, 2013) ("Because Defendant failed to consider the *Teeter* settlement in calculating the amount in controversy with respect to Plaintiffs' claim for unpaid wages, and because the class period in the instant action overlaps with the class period in the *Teeter* action, the Court cannot credit Defendant's calculations regarding the class size and the number of workweeks collectively worked by the putative class members during the class period."); *Naiyan*, 2011 WL 1543371, at *3 (acknowledging that previously settled claims should not be included in amount in controversy calculation but holding that the time period of the settlement at issue did not overlap with the current litigation)).

Regarding the meal period calculations, Plaintiffs argue that Defendants used the wrong statute of limitations when calculating claims for unpaid wages for meal period violations. They argue that a three-year, rather than a four-year limitations period applies. Reply, Dkt. 26 at 10 (citing *Vasserman v. Henry Mayo Newhall Memorial Hosp.*, 65 F.Supp.3d 932, 970 (C.D. Cal. 2014) ("[U]se of a four year limitations period for . . . meal period claims . . . is incorrect as a matter of law," and results in an inflation of the "estimate of damages . . . by at least 25 percent.")). Second, Plaintiffs note that Defendants' calculations include several employees (Miller, Valdez, Tinoco, Garcia and Rocha) who left before the class period, so that any violations they suffered should not be included. *Id.* at 11 (citing Decl. of Ted Tatos Ex. 1, Dkt. 24-2 at 11). Plaintiffs also contend that Defendants incorrectly assumed that all violations occurred during the class period. *Id.*[3] Plaintiffs

---

[3] Plaintiffs provide the following two examples:

- Joel P. Lomeli worked for Stericycle from July 24, 2007 through October 19, 2011. Decl. of Ted Tatos Ex. 1, Dkt. 24-2 at 13. "Defendant includes all 33 meal period violations allegedly suffered by Mr. Lomeli in its calculation, even though only two months of his employment occurred within the class period. In other words, Defendant assumes that all violations occurred during the class period, even if, logically, such violations would not be clustered in a short time frame, such as the last two months of Mr. Lomeli's employment." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

also argue that Defendants included claims arising as to certain employees, *e.g.,* Chavez, who left Stericycle after the Notice of Removal. *Id.* at 12 (citing Decl. of Ted Tatos Ex. 1, Dkt. 24-2 at 35).

Regarding the waiting time penalty calculations, Plaintiffs argue that Defendants included penalties for at least 15 employees whose employment ended after the date of the Notice of Removal. *Id.* (citing Decl. of Ted Tatos Ex. 1, Dkt. 24-2; Ollison, Sosa, Cartaya, Alvarez, Ramos, Brookshire, Grimaldo, McIntosh, Chavez, Mosman, Tuitupou, Mosqueda, Ulibarri, Strother, Canchola). Plaintiffs also argue that Defendants assume that all employees worked full-time, when many worked on a part-time basis. *Id.* at 12-13.

Regarding wage statement violations, Plaintiffs argue that Defendants improperly assumed that no two meal period violations occurred during the same pay period. As a result, each meal period violation must represent a separate inaccurate wage statement. *Id.* at 13.

Regarding Defendants' inclusion of an estimate of a claim for attorney's fees, Plaintiffs argue that courts in the Ninth Circuit are split on whether to do so in calculating the amount in controversy. They also point out that the two-way attorney's fee shifting provision of Cal. Lab. Code § 218.5 does not apply to meal and rest break claims (*Kirby v. Immoos Fire Protection , Inc.,* 53 Cal.4th 1244, 1259 (2014)) and that attorney's fees in a class action settlement are taken from the total recovery, and are not added to it. Motion, Dkt. 16 at 25-26; Reply, Dkt. 26 at 13-14.

In support of certain of these positions, Plaintiffs presented the declaration of named Plaintiff Kevin Henshaw. Decl. of Kevin Henshaw, Dkt. 16-2. Henshaw states that "[f]rom my experience working at Stericycle, I am aware that Stericycle employs some part-time hourly-paid employees." *Id.* ¶ 5. Plaintiffs argue that Defendants' calculations assume a full, eight-hour workday for all relevant employees. This results in an overstatement of the number of class members entitled to meal breaks. Motion, Dkt 16 at 21.

Furthermore, Henshaw claims that the employees who were required to wear the most protective gear, and as a result spent the most time donning safety equipment, were among the lowest-paid at Stericycle. For example, those who spent the most time donning included dock worker and plant workers whose wages started at about $10-$12 an hour. Decl. of Kevin Henshaw, Dkt. 16-2 ¶ 6. Therefore, Plaintiffs object to the assumed $17 per hour figure used by Defendants in their calculation of the amount at issue. However, Defendants did not use this estimate in their Opposition calculation.

- Santiago Z. Corona worked for Stericycle from December 6, 2006 through September 30, 2011, and allegedly suffered 205 meal period violations. *Id.* at 11-12 (citing Decl. of Ted Tatos Ex. 1, Dkt. 24-2 at 12). "Because the statute of limitations reaches back to include violations only as of August 14, 2011, only six weeks of his employment is included in the class period. Nonetheless, Defendant includes all 205 of his meal period violations in its calculation. It is impossible to have 205 violations in the span of 42 days. In short, many of Defendant's calculations do not make sense and cannot be relied on as 'summary judgment-type evidence.'" *Id.* at 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

In their supplemental briefing, Plaintiffs argue that the value of the claims settled at the time of removal should not be considered in the amount in controversy. Instead, a court "must consider evidence bearing on class size, the violation rates of the claims at issue, and whether some employees have already settled their claims." Dkt. 43 at 8-9 (citing *De Leon*, 2013 WL 503092, at *3 ("Because Defendant failed to consider the *Teeter* settlement in calculating the amount in controversy with respect to Plaintiffs' claim for unpaid wages, and because the class period in the instant action overlaps with the class period in the *Teeter* action, the Court cannot credit Defendant's calculations regarding the class size and the number of workweeks collectively worked by the putative class members during the class period."); *Naiyan v. Sodexo, Inc.,* CV 10-9872 PSG CWX, 2011 WL 1543371, at *3 (C.D. Cal., Apr. 25, 2011) (acknowledging that previously settled claims should not be included in amount in controversy calculation)). Plaintiffs argue that the Ninth Circuit has expressly rejected the "affirmative defense" rule, that affirmative defenses cannot be considered in calculating the amount in controversy. *Id.* at 11 (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986) ("in the few cases involving a rule or measure of damages that limits liability, we may go beyond the pleadings for the limited purpose of determining the applicability of the rule or measure of damages.")). Plaintiffs note that Defendants asserted the affirmative defense of waiver and release of claims in its answer. *Id.* at 12.

For these reasons, Plaintiffs argue that the amount in controversy excluding those class members who signed releases is $3,541,654. *Id.* at 13. Plaintiffs also argue that a prospective award of attorney' fees should not be included in the analysis because such an award is not authorized for meal period claims. *Id.* at 14. Plaintiffs also argue that Defendants cannot rely on the value of claims that were not addressed in the Notice of Removal. *Id.* at 15.

b)      Defendants' Position

Defendants justify their calculation of the class size, noting that the Opposition presented evidence based on a calculation of the actual instances of alleged violations, rather than relying on percentages of all hourly non-exempt employees. The latter approach was used in the earlier-filed Notice of Removal. Opposition, Dkt. 24 at 25.

Defendants also contend that it is appropriate to include in the value of the claims made the amounts associated with any putative class members who may have settled because the amount in controversy is that placed at issue by the Complaint. *Id.* at 25-26 (citing *Dart*, 135 S. Ct. at 551, 553). Defendants argue that such releases parallel the value of potential affirmative defenses, which may not be considered in calculating the amount in controversy. *Id.* at 26-27 (citing 14AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3702.4 (4th ed.) ("Even when the complaint discloses a facially valid defense to the plaintiff's action, the sum claimed by the plaintiff controls for amount in controversy purposes, since the defendant might not assert that defense or ultimately might not prevail on it."); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (affirmative defenses may not be used to "whittle down the amount in controversy"); *Hernandez v. Towne Park, Ltd*, No. CV 12-02972 MMM JCGX, 2012 WL 2373372, at *10 (C.D. Cal. June

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

22, 2012); *Lara v. Trimac Transp. Servs. (Western), Inc.*, No. CV 10-4280GHK (JCx), 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.")).

Defendants argue that it is also proper to include a potential claim by the class for an award of attorney's fees in calculating the amount in controversy using a 25% benchmark rate. *Id.* at 24 (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *Sanchez v. Wal-Mart Stores, Inc.*, No. CIVS06CV2573DFLKJM, 2007 WL 1345706, at *2 (E.D. Cal. May 8, 2007) ("Attorney's fees, if authorized by statute or contract, are also part of the calculation."); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (citing "the Ninth Circuit's 'benchmark' of 25 percent")).

Defendants argue that, because a release of liability may be waived as an affirmative defense, it should not be considered when calculating the amount in controversy. Dkt. 42 at 3 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim."); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) ("GeoEx's potential defense to the state court action . . . does not preclude federal jurisdiction . . . . [J]ust because a defendant might have a valid defense that will reduce recovery below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense. Further, if a district court had to evaluate every possible defense that could reduce recovery below the jurisdictional amount the district court would essentially have to decide the merits of the case before it could determine if it had subject matter jurisdiction. This rule applies even though GeoEx is asserting the potential defense, and at the same time seeking a federal forum based on diversity jurisdiction . . . . The district court should not have relied on GeoEx's potential contractual defense to determine the amount in controversy.") (citing *St. Paul Mercury Indemnity Co.*, 303 U.S. at 289–90); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015)).

Defendants also argue that a party who has signed a release may later seek to set it aside on grounds such as duress, coercion, fraud, substantive or procedural unconscionability, mutual or unilateral mistake, lack of understanding due to language differences or public policy. *Id.* at 5. Finally, Defendants argue that these releases should not be considered in calculating the amount in controversy because they had not been entered as of the time when the Complaint was filed. *Id.* at 8 (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 289-90 ("Events occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction.")). In the alternative, Defendants argue that if the 626 releases signed before the filing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

of the FAC are considered in the calculation, at least $4,119,085 would remain in controversy. When a potential award of attorney's fees of 25% of this amount is added, the additional $1,029,771 would result in an amount greater than the $5 Million statutory minimum. *Id.* at 8-9.

c)     Discussion

The FAC does not allege the total amount in controversy. Accordingly, Defendants bear the burden of establishing, by a preponderance of the evidence, that the $5 Million threshold has been met. *Ibarra*, 775 F.3d at 1197.

In the Notice of Removal, Defendants made several, unexplained assumptions. Thus, these calculations were insufficient under *Ibarra* to establish that at least $5 Million was in controversy. *See Ornelas v. Children's Place Retail Stores, Inc.*, No. LA CV13-02226 JAK, 2013 WL 2468388, at *4 (C.D. Cal. June 5, 2013) ("A declaration stating the number of employees who worked for Defendant during the years prior to this action, together with assumptions about these employees, is not sufficient to establish that it is more likely than not that the amount in controversy in this case exceeds $5 Million."). However, the Opposition presented a sufficient analysis and supporting evidence to do so. The calculations there are based on the actual alleged violations, rather than assumptions about them.

It is significant that Defendants have settled claims of a significant portion of the members of the putative class, yet have continued to use an estimate of the value of their claims in calculating the amount in controversy. However, these releases may be viewed as the basis for an affirmative defense. Under that approach, the value of the underlying claims would not be deducted for purposes of determining the amount in controversy. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 288-90; *Geographic Expeditions*, 599 F.3d at 1108. However, this issue need not be addressed. Defendants have shown, by a preponderance of the evidence, that the amount in controversy at the time of removal exceeded $5 Million without considering the value of the claims that have been settled with members of the putative class.

As noted, the amount in controversy is assessed at the time of removal. *Ibarra*, 775 F.3d at 1197. At that time, Defendants state that they had entered into 723 agreements with potential class members to settle their claims. Without considering the value of the claims that formed the basis for these settlements, the value of the meal break, wage statement and waiting time penalty claims are valued at approximately $3,592,667. *See supra* Section II.

Attorneys' fees that are authorized by statute may be considered in calculating the amount in controversy. *Galt G/S*, 142 F.3d at 1156 (9th Cir. 1998); *Sanchez*, 2007 WL 1345706, at *2. The Ninth Circuit has not determined whether the amount in controversy should include only the fees accrued as of the date of removal, or the fees estimated to accrue throughout the action. District courts in the Ninth Circuit have reached different conclusions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
|---|---|---|---|
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case. Compare *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorney's fees likely to be incurred cannot be estimated at the time of removal"); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002) ("Such fees necessarily accrue until the action is resolved. Thus, the Ninth Circuit must have anticipated that district courts would project fees beyond removal") with *Dukes v. Twin City Fire Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, *2 (D. Ariz. Jan. 6, 2010) ("This Court concludes that the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal. Future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal"); *Green v. Party City Corp.*, No. CV-01-09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002) (calculating attorneys' fees on the basis "only [of] work done by plaintiff's counsel prior to removal"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," *citing Miranti v. Lee*, 3 F.3d 925 , 928 (5th Cir. 1993)); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) (declining to consider post-removal events in calculating attorney;s fees for purposes of assessing removal jurisdiction).

*Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019, 2015 WL 1256693 at *12 (C.D. Cal. Sept. 28, 2015).

*Blevins* concluded that "[a]ttorneys' fees are properly included in a calculation of the amount in controversy for diversity jurisdiction purposes." *Id.* (citing *Yocupicio v. PAE Group, LLC*, No. 14-8958-GW, 2014 WL 7405445, *6 (C.D. Cal. Dec. 29, 2014) ("The Court would thus include a 25% fee award in its amount-in-controversy calculation" in a wage and hour class action), *rev'd on other grounds*, 795 F.3d 1057 (9th Cir. 2015)). This reasoning is persuasive. Accordingly, it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims. Such an award is authorized by statute with respect to those claims. This does not include the meal period claim. As Plaintiffs note, an award of attorney's fees as to such claims is not authorized by statute. *Kirby*, 53 Cal. 4th at 1248.

The meal period claim constitutes about 50% of the amount Defendants claim to be in controversy. Consequently, in determining that amount, it is appropriate to consider an attorney's fee based on 25% of the value of the remaining claims. That amount is $1,796,334, which is one half of $3,592,667. Therefore, a 25% fee award would be $449,083.38 ($1,796,334 x .25 =$449,083.38).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV15-08187 JAK (JEMx) | Date | February 14, 2017 |
| Title | Sergio Gutierrez v. Stericycle, Inc. | | |

Under this approach, the total amount in controversy with respect to the meal break claim, wage statement claim and waiting time penalty, excluding those putative class members who settled as of the time of removal and including a 25% attorney's' fee award, is $4,041,750. Defendants have shown, by a preponderance of the evidence, that the remaining eleven causes of action, including the rest break claim, would put at least an additional $958,250 in controversy. Therefore, the $5 Million threshold is met.

IV.    __Conclusion__

For the reasons stated in this Order, the Motion is **DENIED**.

Pursuant to the terms of a prior order (Dkt. 35), on or before February 24, 2017, counsel shall file a stipulation and proposed order, that includes the agreed upon private neutral and anticipated date a mediation will be completed.


**IT IS SO ORDERED**.

_____ : _____

Initials of Preparer    ak
_____
